UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, as Broadcast Licensee of the December 7, 2019, Andy Ruiz, Jr. v. Anthony Joshua II Championship Fight Program,<br>    *Plaintiff*,<br><br>v.<br><br>1) NEG UNITED, LLC, individually and d/b/a SUPER TORTAS M. TACUBAYA and d/b/a M TACUBAYA and d/b/a SUPER TORTAS; and 2) MARIANA ROMAN a/k/a SALVADOR OLMOS, individually and d/b/a SUPER TORTAS M. TACUBAYA and d/b/a M TACUBAYA and d/b/a SUPER TORTAS,<br>    *Defendants*. | Civil Action No. 3:22-CV-2704-X |

## **MEMORANDUM OPINION, ORDER AND FINAL JUDGMENT**

Plaintiff G&G Closed Circuit Events, LLC (G&G) sued against Defendant Neg United LLC and d/b/a Super Tortas M. Tacubaya and d/b/a M Tacubaya and d/b/a Super Tortas (Defendant) for allegedly unlawfully intercepted and broadcast the December 7, 2019, Andy Ruiz, Jr. v. Anthony Joshua II Championship Fight Program. Having already obtained the clerk's default on liability, G&G now seeks a default judgment against the defendant that includes a statutory damages award, additional damages award, and attorney's fees (Doc. 38). For the reasons below, the Court **GRANTS IN PART** the motion for default judgment and enters judgment in favor of G&G.

## I. Background

The Federal Communications Act of 1934, as amended (the "Communications Act") combats against the piracy of radio and television signals.[1] G&G is a license company exclusively authorized to sub-license the closed-circuit telecast of the December 7, 2019, Andy Ruiz, Jr. v. Anthony Joshua II Championship Fight Program (the event) at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, restaurants and the like throughout Texas.

The defendant exhibited the event at its commercial establishment at 2916 S. Bucker Blvd., Dallas, Texas 75227, without authorization or paying a license fee. G&G sued the defendant as well as Mariana Roman, but G&G and Roman stipulated to her dismissal. The remaining defendant failed to answer, and G&G obtained a clerk's default on liability and moved for default judgment.

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> 
> (A) conduct an accounting;
> 
> (B) determine the amount of damages;

---

[1] *See* 47 U.S.C. §§ 553 and 605.

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.[2]

A default requires a court to accept as true a plaintiff's well-pled allegations in a complaint.[3]

In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances.[4] Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[5] Second, the Court assesses the merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings.[6]

### III. Application

The Court deems the facts on liability to be admitted and finds the defendant not to be incompetent, a minor, or on active-duty status with the Uniformed Services of the United States of America because it is a corporate entity. And while Rule 55

---

[2] Fed. R. Civ. P. 55(b)(2).

[3] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well-pled when "all elements of [a] cause of action are present by implication"); *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[4] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[5] *Id.*

[6] *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

allows for hearings, it does not command them. G&G's motion is supported by a declaration on damages. As a result, a ruling without a hearing is proper.

### A. Procedural Appropriateness of Default Judgment

The Court now turns to the six *Lindsey* factors. First, there are no material facts in dispute because the defendant has not filed any responsive pleading. Second, regarding substantial prejudice, the defendant's failure to respond could bring adversarial proceedings to a halt and substantially prejudice G&G, but not itself. G&G first filed its complaint roughly two and a half years ago. Third, the defendant's continual failure to respond or participate in this litigation clearly establishes grounds for the default. Fourth, regarding mistake or neglect, there is no reason to believe the defendant is acting under a good faith mistake or excusable neglect. Fifth, regarding the harshness of a default judgment, the Court is only awarding damages under the statute. The sixth factor is whether the Court would grant a motion to set aside the default. The pleadings, the lack of response, and, consequentially, the failure to plead a meritorious defense indicate a lack of good cause for the Court to set aside the default judgment. Thus, the Court concludes a default judgment is appropriate under these circumstances.

### B. Sufficiency of G&G's Claim

Next, the Court must assess the merits of G&G's claim. Although the defendant, by virtue of its default, is deemed to have admitted G&G's well-pled allegations, the Court must nonetheless review the complaint to determine whether

it established a viable claim for relief.[7] Federal law makes it unlawful to intercept and broadcast cable or satellite transmissions.[8]

Here, the amended complaint pleads that G&G has the exclusive right to sub-license the event at venues in Texas like the establishment; the defendant owned, operated, and managed the establishment on the night of the event; the defendant had no authorization and had not paid for a sub-license to broadcast the event; the defendant could only obtain the broadcast of the event through some unlawful means like an unauthorized decoder; and the defendant did in fact broadcast the event to its patrons at the establishment (as confirmed by an auditor for G&G who entered the establishment). The amended complaint establishes a viable claim for relief against the defendant.

## B. Damages

G&G's motion and appendix show it is entitled to $10,000 in statutory damages. The range for statutory damages is $1,000 to $10,000.[9] But the defendant's failure to respond prevents meaningful discovery on the magnitude of the offense. And the declaration from G&G details the types of harm to G&G, like loss of licensing fees from others who watched the pirated event but would have otherwise paid a fee at home, and reputational damage to G&G. So an award at the top of the statutory range is equitable.

G&G also seeks enhanced statutory damages under 47 U.S.C. § 605(e)(3)(c)(ii)

---

[7] *Nishimatsu*, 515 F.2d at 1206.

[8] *See* 47 U.S.C. §§ 553 and 605.

[9] 47 U.S.C. § 605(e)(3)(C)(i)(II).

for willfulness and "for purposes of direct or indirect commercial advantage or private financial gain." The complaint alleges that the defendant's actions "were committed willfully and with the express purpose and intent to secure a commercial advantage and private financial gain."[10] The defendant's default deems this to be true, and the facts from the complaint and the declaration of the auditor show that the defendant sought private financial gain by showing the event to attract customers. Section 605(e)(3)(c)(ii) allows a court to, "in its discretion . . . increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ."[11] A judge on this Court previously imposed a five-fold multiplier for an urban violation that warranted deterring future violations.[12] Accordingly, the Court imposes $50,000 in additional statutory damages for the willful violation here.

Finally, G&G also seeks an award of attorney's fees under 47 U.S.C. § 605(e)(3)(B)(iii) for one-third of the amount of its $60,000 recovery. While the Court will award fees, the Court prefers the time-honored lodestar method to ensure G&G's attorney recovers no more but no less than he earned. Fortunately, counsel diligently proved up his hourly rate times hours worked as an alternative basis for fees. The Court finds his hourly rate of $300 an hour for anti-piracy litigation (given his

---

[10] Doc. 26 at 4.

[11] 47 U.S.C. § 605(e)(3)(c)(ii).

[12] *J & J Sports Prods., Inc. v. Q Café, Inc.*, Civ. A. No. 3:10–CV–02006–L, 2012 WL 216274, at *2 (N.D. Tex. Jan. 25, 2012) (Lindsay, J.) ("The multiplier of five times in this case is reasonable, considering the location of the broadcast in an urban area and the importance of deterring future violations."); *see also J & J Sports Prods., Inc. v. Rivera*, No. CIV.A. H-13-902, 2014 WL 3533472, at *3 (S.D. Tex. July 14, 2014) ("Regarding additional damages for willful violations, the case law reviewed by this Court suggests that a multiplier of three to eight times the amount of statutory damages is appropriate.").

experience in the field) and his 9.5 hours worked on the matter (proven by line-item entries) to be reasonable and necessary. Accordingly, the Court awards attorney's fees of $2,850 in addition to statutory damages. In the event the defendant engages in litigation in the future, the Court will award supplemental fees at the appropriate time.

G&G is also entitled to costs of Court. It should file a bill of costs within 14 days.

Finally, G&G is entitled to post-judgment interest as allowed by law.[13]

### C. Writs

All writs and process for the enforcement and collection of this Judgment may issue as necessary. In connection with any Writ of Execution in this case, the Court directs the United States Marshals Service to use any means or force reasonably necessary to satisfy this Judgment.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** G&G's motion for default judgment against the defendant. The Court awards G&G $10,000 in statutory damages, $50,000 in enhanced statutory damages for a willful violation, attorney's fees of $2,850, costs, and post-judgment interest. This is a final judgment. The Court

---

[13] *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."). The 1-year average Treasury yield on June 2, 2025, was 4.12%. *See* Selected Interest Rates (Daily) - H.15, Board of Governors of the Federal Reserve System, June 3, 2025, *at* https://www.federalreserve.gov/releases/h15/.

further **ORDERS** G&G to file a bill of costs within 14 days. All other relief not expressly granted is denied. This is a final judgment.

  **IT IS SO ORDERED** this 4th day of June, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE